

# Missouri Court of Appeals
## Southern District

### In Division

DAVID ROMANO, et al.,                     )
                                          )
                    Respondents,          )
                                          )      No. SD37377
        v.                                )
                                          )      **Filed:  June 4, 2024**
MIKE R. & CARLA ADAMS, et al.,            )
                                          )
                    Appellants.           )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Laura Johnson, Judge

**<u>AFFIRMED</u>**

This appeal arises out of a dispute regarding the status of an unpaved road, known as Canyon Road, running roughly parallel to the Finley River in Christian County, Missouri, and land lying between Canyon Road and the Finley River which has been used by the public to access and enjoy the river.  This area, colloquially known as "Lindenlure" due to its location in the Linden Township of Christian County, has been a public spot for accessing the Finley River for recreation since at least the 1940s.  In March 2020, Defendants Adams, landowners, erected a gate at the end of the paved portion of Canyon Road, cutting off public access to the unpaved remainder of Canyon Road and the Finley River.  Plaintiffs filed suit seeking that the unpaved portion of Canyon Road be declared

a public road to prevent the property owners from denying public access to the road.

## Trial Court's Findings of Fact

State Highway 125 runs north and south in Christian County. Canyon Road intersects Highway 125 at Lindenlure, just north of the Finley River and proceeds west along the northern bank of the river. The first stretch of Canyon Road (approximately 250 feet) is paved, followed by an unpaved portion that "doglegs" to the right and follows the Finley River, ending at a gate demarcating private property (the "Old Gate").

The unpaved portion of Canyon Road is composed of gravel and shelf rock. The trial court described it as follows:

> At the end of the paved portion of Canyon Road, the unpaved portion continues straight toward the Finley River for about 86 feet before turning sharply to the right. After the right turn, Canyon Road traverses over shelf rock for 319 feet. Then it goes up slightly in elevation and continues as a dirt or gravel road through vegetation along the edge of the Finley River. The entire length of the road is about 3100 feet.

(Footnote omitted.)

The trial court found specifically that Canyon Road is not in the riverbed of the Finley River, but "does become impassable one or more times a year" during seasonal flooding and periods of high water. Otherwise, it is "generally dry and passable." Strips of land varying in size, shape, and composition lie between the unpaved portion of Canyon Road and the Finley River. Described by Plaintiffs as "the landing, the shoreline, and the parking area along the Finley River," the trial court identified these areas as the "Access Area." The trial court defined the Access Area as "the land between the unpaved portion of Canyon Road and the Finley River stretching along the shore of the River from the beginning of the unpaved portion of the Canyon Road at the base of the Highway 125 bridge to the end [of] Canyon Road at the Old Gate." The trial court specified that the

gravel bar at the base of the Highway 125 bridge is included in the Access Area.

The trial court identified two uses of Canyon Road:  for public recreational access to the Finley River and for access to "private properties owned along and at the end of Canyon Road."  Historically, the public has used Canyon Road to access the Finley River for recreation, including fishing, swimming, and floating, and "for ingress and egress" to the river.  The public frequently parks on the shelf rock and the gravel bars between the shelf rock and the river.  Owners of property along the river also use Canyon Road to access their properties.[1]

Since as early as 1944, B.D. and Margaret Lawson used Canyon Road to access their property.  The Lawsons' successors in interest (currently Plaintiff Belk) have done the same for well over ten years.

Plaintiffs Romano and Evans are Missouri residents who have used Canyon Road and the Access Area to recreate along the Finley River for over ten years and over twenty years, respectively.

### Trial Court's Conclusions of Law

Relevant to this appeal, the trial court made the following conclusions of law:

1. "Canyon Road is a public road pursuant to common law dedication of Canyon Road to the public by Defendants Adams and Fraziers [sic] and their predecessors in interest."

2. "Alternatively, the Court finds that the public has a prescriptive easement to use Canyon Road."

---

[1] This includes Defendants Adams and Frazier and Plaintiff Belk.  Belk has an easement to cross property owned by the McCoys (not parties to the litigation) to access his property from Canyon Road via the Old Gate.  After the March 2020 erection of the new gate at the end of the paved portion of Canyon Road, Belk was no longer able to access his property by vehicle.

3. "The Court further finds that the public has a prescriptive easement to cross the Access Area to reach the Finley River."

4. "Finally, the Court finds that Plaintiff Belk has a private prescriptive easement to use Canyon Road."[2]

## Legal Principles

*Standard of Review*

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." ***Ivie v. Smith***, 439 S.W.3d 189, 198–99 (Mo. banc 2014) (quoting ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The trial court's judgment is presumed correct," and appellants carry the burden of proving error. ***Surrey Condo. Ass'n, Inc. v. Webb***, 163 S.W.3d 531, 535 (Mo.App. 2005). The court of appeals must defer to the trial court's determination of contested facts, crediting the evidence and reasonable inferences that support the judgment while disregarding all contrary evidence and inferences. ***Geier v. Sierra Bay Dev., LLC***, 528 S.W.3d 51, 54 (Mo.App. 2017). "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." ***J.A.R. v. D.G.R.***, 426 S.W.3d 624, 626 (Mo. banc 2014) (quoting ***In re Adoption of C.M.B.R.***, 332 S.W.3d 793, 815 (Mo. banc 2011)). "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses." ***Surrey Condo. Ass'n, Inc.***, 163 S.W.3d at 536 (quoting ***Savannah Place, Ltd. v. Heidelberg***, 122 S.W.3d

---

[2] The trial court also found that "Plaintiffs failed to establish that Canyon Road is a public road by statutory dedication or that Plaintiffs Thorntons [sic] have a private prescriptive easement to use the Road."

4

74, 86 (Mo.App. 2003)).

*Public Road by Common Law Dedication (Point I)*

Appellants contend the trial court erred in finding Canyon Road is a public roadway through common law dedication because there was no "strong conclusive evidence sufficient to divest the private property owners of their property in favor of the public."

To prove common law dedication of a roadway to public use, a plaintiff must demonstrate (1) that the owner unequivocally "intended to dedicate the land to public use," (2) that the dedicated land was "accepted by the public," and (3) "used by the public." **Whittom v. Alexander-Richardson P'ship**, 851 S.W.2d 504, 507-08 (Mo. banc 1993). The intent to dedicate is paramount in our analysis. **Id.** at 508. It must be "unequivocally manifested, expressly or by plain implication." **Tinnes v. Brand**, 248 S.W.3d 113, 115 (Mo.App. 2008). Intent may be manifested by words or by conduct. **Patterson v. Null**, 751 S.W.2d 381, 386 (Mo.App. 1988). "The owner's acts or declarations must convincingly demonstrate a purpose to create a public right to the land adverse to himself." **Tinnes**, at 115-16. A landowner must do "something by act or by word which would unequivocally point to but one conclusion, namely, that the owner *intended to dedicate* to public use." **Id.** at 116 (quoting **Connell v. Jersey Realty & Inv. Co.**, 180 S.W.2d 49, 53 (1944)).

> When there is no actual intention, it is possible that an owner's actions may nevertheless evince an intention to dedicate. In such circumstances, because dedication is a theory premised on estoppel rather than on an affirmative grant, the owner can be precluded from resuming rights over the property if the public acts upon the owner's manifestations.

**Whittom**, 851 S.W.2d at 508 (internal citations omitted).

The trial court found, "Canyon Road is a public road pursuant to common law

dedication of Canyon Road to the public by Defendants Adams and Fraziers [sic] and their predecessors in interest." In support of that finding, the trial court determined that "[t]he lack of interference by the Adamses, the Fraziers and their predecessors in interest with the extensive public use of Canyon Road throughout the years demonstrates an intent to dedicate Canyon Road to the public."

Appellants argue that the court's reliance "solely" on the signatures of a previous owner on two petitions to keep Canyon Road open was insufficient to support an intention to dedicate the road to public use, because the signatures are hearsay and the previous owner, now deceased, cannot testify regarding her intent. Appellants' arguments fail because the trial court did not rely "solely" on the signatures of a predecessor in interest to the land in finding intent. After discussing the signatures, the trial court stated: "[e]ven without the evidence of the owner's actual intent, there is sufficient evidence to establish an intent to dedicate Canyon Road to the public." The trial court then discussed the evidence that since at least 1944 the public consistently used Canyon Road to access the Finley River for recreation, the county maintained the road, and county law enforcement patrolled the road. Prior to the 2020 erection of the New Gate, "access to Canyon Road had never been restricted." The court thus concluded, the landowners "inaction in the face of such extensive public use of the Road shows an intent to dedicate Canyon Road for public use."

Under the standards outlined above, intent can be demonstrated by "plain implication," *Tinnes*, 248 S.W.3d at 115, which may be manifested by words or by conduct. *Patterson*, 751 S.W.2d at 386. Therefore, it was not contrary to the law for the trial court to look at evidence beyond the petitions signed by the predecessor in interest to glean intent. We find substantial evidence in the record sufficient to support the

6

finding of intent.

Using the same evidence, we find no error in the trial court's determination that Canyon Road was both accepted and used by the public.  Although there is evidence in the record that would support a contrary finding, particularly regarding whether the county accepted the road, "dedication is not required to be accepted by governmental authority, so long as it is in fact accepted by the public as demonstrated by the use made of it." *Id.*  Moreover, as stated above, we are required to "disregard contrary evidence and inferences; and defer to the trial court's determination of contested facts." *Geier*, 528 S.W.3d at 54 (quoting *Whispering Oaks Farms, LLC v. Lebanon Livestock Auction S & T, LLC*, 466 S.W3d 717, 719 (Mo.App. 2015)).  Accordingly, the Appellants have not met their burden to demonstrate the trial court's finding of common law dedication of Canyon Road was erroneous.  Point I is denied.

*Prescriptive Easement to the Public of Canyon Road (Point II)*

Appellants also contend that the trial court erred in granting a prescriptive easement to the public for use of Canyon Road because the "permissive" use never ripened into adverse use for a period of ten years.

To prove a prescriptive easement in Missouri, a plaintiff must show by clear and convincing evidence public use that is "1) continuous; 2) uninterrupted; 3) visible; and 4) adverse for 5) a period of 10 years." *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 118 (Mo. banc 2010).  *See also Jacobs v. Roschevitz*, 20 S.W.3d 598, 600 (Mo.App. 2000) (citing *Homan v. Hutchison*, 817 S.W.2d 944, 947-48 (Mo.App. 1991)).  Adverse use may be inferred. *Orla Holman Cemetery, Inc.*, 304 S.W.3d at 119.  To demonstrate adverse use, a plaintiff need only show the public "acts in such a manner as to indicate a nonexclusive right to use the property." *Id.*

(quoting **Whittom**, 851 S.W.2d at 508-09). "Proof of open, notorious, continuous, and uninterrupted use for the requisite ten[-]year period, however, in absence of evidence to explain how use began, raises the presumption that the use was adverse and under a claim of right." **Kirn v. Oehlert**, 625 S.W.2d 921, 922 (Mo.App. 1981).

> [I]t has long been settled law in Missouri that the public may acquire the right to the use of a road or easement over the land of another, when such road has been established . . . by adverse occupancy and use of the same by the public for a period of time equal to that prescribed by the statute of limitations . . . .

**Reardon v. Newell**, 77 S.W.3d 758, 761 (Mo.App. 2002) (alterations in original) (quoting **Terry v. City of Independence**, 388 S.W.2d 769, 774 (Mo. 1965)).

Having raised the presumption of adverse use, the onus moves to the landowner to demonstrate "the use was permissive and by virtue of some license, indulgence[,] or agreement inconsistent with the claim of right." **Kirn**, 625 S.W.2d at 922. Whether use was adverse or permissive "'is a matter involving the credibility of witnesses which should be resolved by the trier of fact.'" **Leonard v. Robinson**, 276 S.W.3d 868, 874 (Mo.App. 2009) (quoting **Harmon v. Hamilton**, 903 S.W.2d 610, 613 (Mo.App. 1995)). We defer to the trial court's determination of this issue. **Leonard**, 276 S.W.3d at 874. "[P]ermission given after a road easement is already established by adverse use has no legal effect." **Kirn**, 625 S.W.2d at 923.

The trial court determined that Respondents had "proven each element of a public prescriptive easement [over Canyon Road] by clear and convincing evidence." The trial court relied on evidence of "continuous and uninterrupted use by the public for decades," that the public's use was "highly visible," for well over ten years. The trial court cited **Reardon**, 77 S.W.3d at 761, in finding that the public's use was adverse and in "non-recognition of the owner's authority to permit or prohibit use." The trial court determined

8

that the public's use of Canyon Road was similar to that in ***Reardon***, as the road was used by residents of nearby properties, the county authorities graded the road, and law enforcement patrolled the area.

Appellants point to portions of the record to support a finding of permissive use to support their argument that the requirement of adverse use for prescriptive easement was not met. A close reading of those passages, however, does not definitively demonstrate a grant of permissive use. That testimony, from a grandson of previous owners of a tract of land abutting Canyon Road, indicated that his family used the road to travel to his grandparents' land in the 1940s and 1950s.

In reply, Appellants contend that the existence of a familial relationship alters the court's analysis of permissive use. In ***Poe v. Mitchener***, cited by Appellants, we considered the "family relationship between the owners of respective tracts" in our discussion of permissive use. ***Poe v. Mitchener***, 275 S.W.3d 375, 380 (Mo.App. 2009) (quoting ***Brick House Cafe & Pub, L.L.C. v. Callahan***, 151 S.W.3d 838, 844 (Mo.App. 2004)). Here, however, we are not dealing with two adjoining tracts of land owned by family members. We are dealing with the public's use of Canyon Road. Thus, the testimony about family use of Canyon Road is not persuasive on the question of adverse use by the public.

Appellants argue that permissive use of Canyon Road by family members demonstrates an "original private familial ownership" that "belies any claim of a public roadway until Individual Respondents' demonstration of the requisite adverse use and time period." Original permissive use is not part of the Respondents' *prima face* case. As stated specifically above, once Respondents made their *prima facia* case for prescriptive easement by showing that the public's use of the road was continuous, uninterrupted,

9

visible, and adverse for at least ten years, then the burden shifted to the Appellants to demonstrate that the use was not adverse, but permissive. Appellants' claim that Respondents bore any burden to overcome Appellants' purported showing that the original use was permissive to make their *prima facie* case misstates the law.

Furthermore, Appellants highlight no testimony or document in the trial record granting a permissive use, such as a conversation or written grant. *See **Hirsch v. Ebinger***, 334 S.W.3d 695, 699 (Mo.App. 2011) (users asked permission to park car on landowner's property); ***Orla Holmon Cemetery, Inc.***, 304 S.W.3d at 119 (affidavit stating landowner's father gave permission for use of property); ***Kirkpatrick v. Webb***, 58 S.W.3d 903, 906 (Mo.App. 2001) (landowner testified use was permissive).

Appellants further state, "Individual Respondents instead rely in error on the testimony of multiple witnesses about long and continued public use of the road to meet their burden of proof to establish the element of adverse use." Yet, long and continued used *is sufficient* to demonstrate presumptively adverse use. "A long and continuous use justifies the presumption of adversity and shifts the burden to the owner to counter the presumption by proving that permission was given for the use." ***Smith v. Chamblin Props., LLC***, 201 S.W.3d 582, 587-88 (Mo.App. 2006). Again, Appellants misstate the law.

Notably, the grandson's testimony included statements that he saw the public use Canyon Road and the Access Area for recreation since at least the 1940s. Thus, his testimony better supports the inference that the landowners were aware of the public's adverse use of Canyon Road as early as 1944, rather than supporting Appellants' point. Even if the grandson's testimony would have identified an act or agreement

10

demonstrating permission, the trial court was free to believe or disbelieve that testimony. We defer to the trial court's factual determination.

> When such [continuous, uninterrupted use of the roadway in question for the prescriptive period of ] use is proven, an inference or presumption arises that the use is adverse, and the proof of long and continued use without evidence to explain how it began raises the inference it was adverse under a claim of right; the burden is then cast on the subservient landowner to show that it was by virtue of some license or permission.

*Gault v. Bahm*, 826 S.W.2d 875, 881 (Mo.App. 1992). "Testimony of permissive use that is not believed does not cause the inference or presumption of adverse use to vanish."

*Harmon*, 903 S.W.2d at 613. We will not disturb the findings of the trial court on this factual issue.

Based on the record before us, clear and convincing evidence supports the trial court's finding that Canyon Road is subject to a public prescriptive easement. Appellants' arguments to the contrary are not persuasive. Point II is denied.

*Public Prescriptive Easement over Access Area (Points III and VI)[3]*

Regarding the public prescriptive easement over the Access Area, the trial court determined:

> The Court finds that the public has a prescriptive easement to cross the Access Area at the Highway 125 gravel bar and as shown on the Young Survey. . . . The Court further holds that the public has a prescriptive easement to use the gravel bars, including the Highway 125 gravel bar, the Beach, and the shelf rock for recreation. This holding does not provide the typical definiteness used in describing an easement. The area in this case defies such definiteness. But the gravel bars, shelf rock and other areas of access are well known to the public that uses them and have used them consistently for decades.

Appellants argue that this description is so vague as to be incapable of being located and is therefore void and unenforceable (Point III), and based on "inconsistent and

---

[3] Points III and VI are addressed in tandem for efficiency and clarity of analysis.

ambiguous findings" rendering the trial court's judgment not capable of appellate review (Point VI).

It is important to note that the paragraph quoted above is not the trial court's only description of Canyon Road and the Access Area. In its findings of fact, the trial court stated:

> At the end of the paved portion of Canyon Road, the unpaved portion continues straight toward the Finley River for about 86 feet before turning sharply to the right. After the right turn, Canyon Road traverses over shelf rock for 319 feet. Then it goes up slightly in elevation and continues as a dirt or gravel road through vegetation along the edge of the Finley River. The entire length of the road is about 3100 feet.
>
> . . . .
>
> The "Access Area" as defined by the Court includes the land between the unpaved portion of Canyon Road and the Finley River stretching along the shore of the River from the beginning of the unpaved portion of the Canyon Road at the base of the Highway 125 bridge to the end [of] Canyon Road at the Old Gate.
>
> The Access Area includes large gravel bars and a strip of shelf rock. A large gravel bar immediately to the south of the Highway 125 bridge (the "Highway 125 gravel bar") is included in the Access Area as defined by the Court.

(Footnote omitted.)

Furthermore, the trial court referred to the Young Survey and incorporated it into the judgment by referring to the survey plat and the survey descriptions of Canyon Road and the Access Area as trial exhibits 44, 45, and 47.

In *Allen v. Smith*, 375 S.W.2d 874, 883 (Mo.App. 1964), this court determined that "the extent of detail and the degree of precision required in country road cases is that sufficient to enable a person going upon the land to find and identify the way by reference to such description." "[T]he right of way involved should be definitively described in the judgment, at least so that its location, with the aid of such description, could readily be

located . . . ." *Id.* at 882.

In general, even when the parties to litigation may be able to locate an easement, "a proper legal description is required for the benefit of any later conveyance of the property." *Maune v. Beste*, 292 S.W.3d 528, 530 (Mo.App. 2009). In *Maune*, the court determined it did not have jurisdiction to hear an appeal regarding a prescriptive easement because the trial court's judgment failed "to adequately describe the affected property." *Id.* The *Maune* court indicated that the record may have included documents allowing the trial court to adequately describe the boundaries of the easement, but the trial court failed to include these or refer to them in the judgment, rendering the judgment inadequate and therefore not final. *Id.* By contrast, here the trial court's findings of fact and conclusions of law refer frequently to the Young survey and its attendant descriptions of both Canyon Road and the Access Area, referring to them by exhibit number and incorporating them into the judgment.

In *Skinner v. Osage Cnty.*, 822 S.W.2d 437 (Mo.App. 1991), the appellate court found that the trial court's description of a public road was inadequate. The totality of the trial court's entry of judgment on the count regarding the public road read: "[T]he roadway is declared to be a public road all the way across the river; i.e., a ford." *Id.* at 443. The court of appeals stated: "This, obviously, is an inadequate description of the roadway declared public. No one knows where the public has the right to travel and, conversely, what travel would be trespass." *Id.* This one-line description of the public roadway in *Skinner* is not comparable to the 31-page findings of fact and conclusions of law which was supported by testimony and exhibits incorporated into the judgment in this case.

In *Wells v. Carpenter*, the appellate court determined that the description of a

13

pathway through a neighbor's yard was not sufficient to enable an easement to be located. 916 S.W.2d 405, 407-08 (Mo.App. 1996). The evidence used to identify the pathway included testimony and photographs that vaguely showed a path "60 or 70" feet behind a house. *Id.* at 408. No survey was taken to demarcate the pathway. Other evidence demonstrated that use of the pathway was not consistent over time. The court of appeals affirmed the trial court's judgment that the party seeking the easement "had not shown a sufficiently definite description of the easement they sought." *Id.* at 409.

In certain situations, "[w]here no definite location is given as to the easement, the course over which it is to be exercised can be fixed in either of two ways, that is, by express agreement or by a selection that can be inferred by proof of the use of a particular way." *Helgeson v. Ochs*, 988 S.W.2d 545, 548 (Mo.App. 1999) (quoting *Edward Runge Land Co. v. Busch*, 594 S.W.2d 647, 650 (Mo.App. 1980)).

After reviewing these cases, we conclude that the trial court's descriptions in its 31-page findings of fact and conclusions of law are more than adequate to "enable a person going upon the land to find and identify the way by reference to such description." *Allen*, 375 S.W.2d at 883. And the descriptions of the land and reference to the survey and survey descriptions designated as exhibits are not comparable to the vague descriptions in *Skinner* and *Wells*. *Maune* teaches that referring to exhibits in the record is a sufficient way to incorporate those documents into the judgment.

Regarding Appellants' Point VI, when the river is at a low-water point, the gravel bars along the north side of the river between the river and the shelf rock are frequently used for parking. The trial court designated this area the Access Area. When the water is high, which occurs seasonally, the gravel bars and shelf rock may be covered by water. The public does not use the gravel bars and shelf rock for driving or parking when those

14

areas are covered by water. This does not mean, as urged by Appellants, that when the water is at a low point the Access Area and Canyon Road are in the river, nor does the trial court's description give the public "the right to drive and park in the Finley Creek."

While we recognize, as urged by Appellants, that the Young Survey did not include a description of the Highway 125 gravel bar as part of the Access Area, the omission does not negate the descriptions supporting the easements for Canyon Road and the Access Area. Testimony and exhibits at trial discussed the Highway 125 gravel bar as a point-of-reference. Photographs of it are in the record. Witnesses discussed parking or using the Highway 125 gravel bar to access the river. The trial court's explanation and description of the Access Area, which includes "land between the unpaved portion of Canyon Road and the Finley River stretching along the shore of the River from the beginning of the unpaved portion of the Canyon Road at a base of the Highway 125 bridge to the end [of] Canyon Road at the Old Gate," is adequate to allow the area to "readily be located." **Allen**, 375 S.W.2d at 882. The trial court's determination that the Highway 125 gravel bar was sufficiently identified despite its omission from the Young survey was not an abuse of discretion. Points III and VI are denied.

*Amendment of the Pleadings to Conform to the Evidence (Point IV)*

Appellants argue that the trial court abused its discretion in amending the pleadings to conform to the evidence adduced at trial. They contend that the court's amendment was "an impermissible ambush" and "sandbag[ing]."

The Supreme Court of Missouri recognizes "[i]t is the sense of our rules that amendments be liberally allowed." **Dye v. Div. of Child Support Enf't, Dep't of Soc. Servs., State of Mo.**, 811 S.W.2d 355, 358 (Mo. banc 1991). We "will not disturb the decision to grant leave to amend absent a showing the trial court obviously and

palpably abused its discretion." ***Carpenter v. Countrywide Home Loans, Inc.***, 250 S.W.3d 697, 701 (Mo. banc 2008). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Rule 55.33(b). Failure to timely and specifically object to evidence on the ground that it is beyond the scope of the pleadings constitutes consent for determination of issues thereby raised. Issues raised by implied consent are treated as if raised by the pleadings even though the pleadings are not formally amended to conform to the evidence." ***Kackley v. Burtrum***, 947 S.W.2d 461, 465 (Mo.App. 1997) (citing ***Midwest Materials Co. v. Village Dev. Co.***, 806 S.W.2d 477, 488 (Mo.App. 1991)).

While couched as a challenge to the trial court's *sua sponte* amendment of the pleadings to conform to the evidence adduced at trial, this point on appeal is another form of challenge to the trial court's inclusion of the Highway 125 gravel bar in the Access Area despite its omission from the Young Survey. In this iteration, Appellants argue the Highway 125 gravel bar was not appropriately pleaded and the trial court erred in finding that it was properly pleaded because the question was not tried by implied consent of the parties. *See* Rule 55.33(b).[4]

Notably, the Appellants (defendants below) filed a Motion to Amend, Vacate, and Reconsider Judgment pursuant to Rule 75.01 after the trial court's entry of judgment in August 2021. In that motion, Appellants argued that "[t]he Court should vacate its [j]udgment to exclude the award of prescriptive easement to the public over the Highway 125 gravel bar and for any portions of the Court-designed Access Area that exceed that

---

[4] All rule references are to Missouri Court Rules (2021).

which was identified and sought by Plaintiffs." Appellants alleged that "Plaintiffs did not file a cause of action seeking access to or over the Highway 125 gravel bar."

In response to the arguments of Appellants in the Motion to Amend, Vacate, and Reconsider Judgment, the trial court issued an order indicating its disagreement with Appellants' assertions. The trial court stated: "In their First Amended Petition, Plaintiffs repeatedly refer to 'Canyon Road from State Highway 125 to the water and along the Finley River.' Plaintiffs [also] sought declaratory judgment that Canyon Road is a Public Road established from Highway 125 generally westerly to its Dead End." The trial court concluded, "the Court finds that the inclusion of the Highway 125 gravel bar in the Access Area as determined by the Court was sufficiently raised in the pleadings and the evidence."

In its Second Amended Findings of Fact and Conclusions of Law, entered December 14, 2021, the trial court added the following in a footnote:

> The Court finds that Plaintiffs' First Amended Petition adequately pleads the Highway 125 gravel bar and that substantial evidence of the use of the gravel bar for recreational activities and to access the Finley River was admitted during the hearing. To the extent Plaintiffs failed to include the Highway 125 gravel bar in their pleadings, those pleadings are amended to conform to the evidence. The fact that the gravel bar was mistakenly omitted from the Young Survey does not prevent its inclusion in the relief granted by the Court.

Considering the procedural sequence outlined above, the trial court acted reasonably in adding its footnote addressing Appellants' Motion to Amend, Vacate, and Reconsider Judgment. It is clear the trial court believed the Highway 125 gravel bar issue was appropriately pleaded and included in the petition for relief and its subsequent amendments. The responsive footnote shows the trial court was attempting to ensure that the pleading question had been settled. As we did above, we perceive no abuse of

discretion in the trial court's findings regarding the inclusion of the Highway 125 gravel bar in the Access Area as described by the trial court. Based on the evidence before the court regarding the Highway 125 gravel bar, the testimony, and other demonstrative exhibits, we are incredulous of Appellants' arguments that they were ambushed or sandbagged by the trial court's post-trial amendment of the pleadings. Point IV is denied.

*Public Road by Statutory Dedication (Point V)*

The trial court determined that there was insufficient evidence to find Canyon Road a public road through statutory dedication. Section 228.190.[5] In weighing the evidence, the trial court determined "Plaintiffs have failed to establish Canyon Road is a public road pursuant to Section 228.190. To the extent Plaintiffs' First Amended Petition raises a claim for statutory dedication, the Court finds in favor of Defendant Christian County on that claim."[6]

We will affirm the judgment of a trial court on any basis supported in the record. ***Bramer v. Abston***, 553 S.W.3d 872, 879 (Mo.App. 2018). A road can be found public in one of three ways: "(1) under the provisions of Chapter 228, RSMo, (2) by prescription, or (3) by implied or common law dedication." ***Reardon***, 77 S.W.3d at 761 (quoting ***Coffey v. State ex rel. County of Stone***, 893 S.W.2d 843, 846 (Mo.App. 1995)). Having affirmed the trial court's finding that Canyon Road is a public road by common law dedication and by prescriptive easement, it is not necessary to review the trial court's finding regarding statutory dedication. Point V is moot.

*Private Prescriptive Easement for Respondent Belk (Point VII)*

Appellants' final point argues that the trial court erred in granting a private

---

[5] All statutory citations are to RSMo (2016).
[6] Although a named defendant below, Christian County did not file a brief or participate in this appeal.

prescriptive easement to Respondent Belk over Canyon Road. The trial court stated, "[i]n light of the Court's findings that Canyon Road is a common law public road and a public prescriptive easement, the Court need not determine whether a private prescriptive easement exists, but will do so." As noted above, we will affirm the trial court's judgment on any basis supported in the record. *Bramer*, 553 S.W.3d at 879. We agree with the trial court's first inclination that having found a public prescriptive easement along Canyon Road, it was unnecessary to find a private prescriptive easement for Respondent Belk. Point VII is moot.

JACK A. L. GOODMAN, C. J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS